...

# EXHIBIT 2

London July 2012

Dear Mr Green,

I am writing to you anonymously because I fear my career will be ended if I am identified. This note concerns allegations made by a lawyer called Mr Neil Gerrard. Even if partially true they make a mockery of the operational independence of the Serious Fraud Office and its ability to effectively investigate.

My only regret is that I did not write sooner; I hesitated because "whistleblowing" against a colleague is not something that comes easily. I now realise that to delay was wrong.



A few months ago I was in the company of Neil Gerrard as part of a fairly large group; mainly lawyers. During the evening he was holding forth about on number of different issues. Whilst admittedly the worse for wear, he made the following assertions/allegations about the Serious Fraud Office and about you. I managed to record about 60% on my BB and although there is a lot of background noise his voice is perfectly recognisable and what he said is perfectly clear.

Summary:

1. He claims to be given "insider information" on companies and individuals that are the subject of Serious Fraud Office investigations. His main contact is an individual identified as "Dick". He made the joke that this man is "the only Dick a lawyer ever needed". This information includes central allegations, copies of case notes and the Serious Fraud Office investigation strategy. Gerrard then uses this information to obtain instructions from the party being investigated.

Specific cases he mentioned were a company called Alstom and Bernie Ecclestone. At the time he claimed he knew that the Serious Fraud Office going to investigate the Barclays LIBOR scandal and he was using that information to "get instructed shortly". Regarding Ecclestone he also claimed to have high-level contact in the relevant department of the Revenue whom he "did deals with" to get clients "off the hook".



He alleged that he was warned by the Serious Fraud Office that there was a "multi agency" investigation into a number of leading law firms in London including Eversheds. He claimed to have "fucked" any relationship the law firm Jones Day may have with the SFO by "judicious leaking".

2. He claimed that this insider information was provided with the tacit agreement of yourself and Dominic Grieve, as there was "nothing more satisfying" than a guilty party paying for an investigation into their own wrongdoing.

3. He claimed the Serious Fraud Office was inept and toothless and could only investigate seven or eight cases a year. As part of "the agreement" with your office he could guarantee that his clients would never be investigated and that he could change a criminal investigation into a civil settlement. He cited the case of Halliburton whom he apparently represented recently.

He claimed that he had "negotiated" the Serious Fraud Office into agreeing a £9 million civil settlement as opposed to the $US 750 million criminal judgement in the US.

4. He claimed that via Miriam Gonzales his legal partner he had direct access to Nick Clegg and the heads many European governments. He had the ability to influence and in some cases change government policy. He described to us "in confidence" how he had been asked by Dominic Grieve to oversee and guide changes to UK regulatory strategy with the aim of giving the Serious Fraud Office the "kick up the arse" it needed.

5. Turning to you personally he said of your recent appointment that you were "very much second choice" and that he didn't accept the post "this time round" as he couldn't afford "a pay cut". He claimed that you were "keeping the seat warm for him" and when he takes over from you in 2016 Dominic Grieve had guaranteed him £250,000 a year salary as opposed to £150,000 and an elevation to the House of Lords as opposed to a Knighthood.

These are the key allegations. Whatever the truth or otherwise a number of us were appalled that despite being obviously drunk he should speak so openly, especially as it appears that he is receiving confidential and commercially sensitive information from contacts in the Serious Fraud Office.

I cannot come forward publicly as my career would be ended. I have instructed a French law firm (I cannot do this in London) to try and identify how I might release a copy of the audio recording to you without my identity being compromised.