

OFFICIAL

# Requests for Mutual Legal Assistance in Criminal Matters

## Guidelines for Authorities Outside of the United Kingdom - 2015

12th Edition

International Criminality Unit, Home Office, 3rd Floor Seacole Building, 2 Marsham Street, London SW1P 4DF

mlapolicy@homeoffice.gsi.gov.uk

March 2015

# CONTENTS

## SECTION 1: Introduction ................................................ 4
Role of Central Authorities in the UK ................................................ 4
Requests for the Crown Dependencies and UK Overseas Territories ................ 5
Types of Assistance ................................................ 5
International Agreements ................................................ 5
Reciprocity ................................................ 6
Confidentiality ................................................ 6
Collateral Use - Requests Made by the UK ................................................ 6
Collateral Use - Requests Made to the UK ................................................ 6
Law Enforcement (Police) Cooperation ................................................ 7

## SECTION 2: How to Make a Request ................................................ 8
Is MLA Appropriate? ................................................ 8
Who Can Send an MLA Request ................................................ 8
De Minimis Requests ................................................ 8
Dual Criminality ................................................ 9
Language of Requests ................................................ 9
Format of a Request ................................................ 9
Transmission ................................................ 11
Where to Send MLA Requests ................................................ 11
Timescales ................................................ 13
Queries about Requests ................................................ 13
Urgent Requests ................................................ 14
Cost of Executing Requests ................................................ 14
Notification Where Assistance is No Longer Required ................................ 14
Linked Requests ................................................ 14
Refusal of MLA Requests ................................................ 15

## SECTION 3: Types of Assistance ................................................ 16
Service of Process ................................................ 16
Statements and Interviews ................................................ 18
Evidence on Oath/in Court ................................................ 19
Hearings via Video or Telephone Conference ................................................ 21
Asset Tracing ................................................ 23
Production Orders ................................................ 24
Search and Seizure ................................................ 26
Communications Data ................................................ 28
Live Interception of Communications ................................................ 30
Restraint (Freezing) ................................................ 31
EU Freezing Order ................................................ 35
Confiscation & Forfeiture ................................................ 36
EU Confiscation Order ................................................ 39
Temporary Transfer of a Prisoner for Purposes of Investigation ........................ 40
Passport Information and Immigration Status ................................................ 43
Transfer of Proceedings ................................................ 44
Criminal Records ................................................ 46
Judicial Records ................................................ 47
Other Requests for MLA ................................................ 50

## SECTION 4: Foreign Officers in the UK ............................................. 53

## SECTION 5: Civil Matters ....................................................... 54
**Civil Forfeiture of Assets**.......................................................................55

# SECTION 1: Introduction

Mutual Legal Assistance (MLA) is a method of cooperation between States for obtaining assistance in the investigation or prosecution of criminal offences.  MLA is generally used for obtaining material that cannot be obtained on a law enforcement (police to police) to basis, particularly enquiries that require coercive means. Requests are made by a formal international Letter of Request (ILOR or LOR).  In civil law jurisdictions these are also referred to as *Commissions Rogatoires*.  This assistance is usually requested by courts or prosecutors and is therefore also referred to as 'judicial cooperation'.

MLA can also be used to obtain assistance in the investigation of the proceeds of crime and also in their freezing and confiscation. Proceeds of crime matters can be on a criminal (conviction) basis or a civil (non conviction) basis.

Due to the increasingly global nature of crime, MLA is critical to criminal investigations and proceedings both in the UK and abroad. The UK is committed to assisting investigative, prosecuting and judicial authorities in combating international crime and is able to provide a wide range of MLA.  MLA is also a vital tool in the pursuit of criminal finances including the recovery of the proceeds of crime that may have been moved and hidden assets overseas.

These guidelines are to ensure that requests for MLA received by the UK can be acceded to and executed quickly and efficiently.   The guidelines include:

- Guidance to authorities who wish to make a **formal request for MLA** to the UK ('requesting authorities');
- Guidance to authorities on what can be requested **without** making a formal request for MLA to the UK;

These guidelines contain advice on how to make an MLA request, service of process, transfer of proceedings, and restraint and confiscation of property.

## Role of Central Authorities in the UK

Central authorities have the function of receiving, acceding to and ensuring the execution of MLA requests. Subject to the exceptions below, all formal requests for assistance **must** be sent to a central authority for consideration.  The UK has three central authorities:

- Home Office UK Central Authority ('UKCA' for MLA requests in England, Wales and Northern Ireland;
- Her Majesty's Revenue and Customs ('HMRC') for MLA requests in England, Wales and Northern Ireland relating to tax and fiscal customs matters only, for example, the collection and management of revenue, the payment of tax credits;
- Crown Office for MLA requests in Scotland (including devolved Scottish tax matters).

The following are exceptions to when to using a central authority to receive requests:

- EU Freezing Orders for property must be sent to the relevant UK prosecuting authority for the purposes of recognition and execution (except "property related to terrorism offences or investigations" which must be sent to a central authority);
- EU Confiscation Orders must be sent to the relevant UK prosecuting authority for the purposes of recognition and execution.

Contact details for all relevant UK authorities are in Section 2.

## Requests for the Crown Dependencies and UK Overseas Territories

The Crown Dependencies (Bailiwicks' of Guernsey and Jersey, and the Isle of Man), and the UK Overseas Territories (Anguilla, Bermuda, British Virgin Islands, Cayman Islands, Falklands, Gibraltar, Montserrat, St Helena, Turks and Caicos Islands, and Pitcairn) are not part of the UK.

The Crown Dependencies and the Overseas Territories are wholly responsible for executing requests within their own jurisdictions.

> **MLA requests for the Crown Dependencies and the Overseas Territories must not be sent to the UK.**

MLA requests should usually be sent to the Attorney General of the Crown Dependency or Overseas Territory from where the assistance is required. The contact details for these jurisdictions can be found here.

Requests for intelligence from the Crown Dependencies, Falklands, and St Helena should be submitted via the National Crime Agency (NCA). The other Overseas Territories host Interpol sub-bureaux.

## Types of Assistance

There is a wide range of MLA that can be provided by the UK conditional on the correct criteria being met. Please refer to Section 3 of this guide for information about the most common types of MLA.

In some cases evidence can be obtained via law enforcement cooperation'. Where such cooperation is available for a specific measure this is highlighted in Section 3.

## International Agreements

The UK is party to a number of bilateral and multilateral MLA treaties (see this link for a list of the international agreements that the UK is party to). The UK can provide MLA to any country or territory in the world, whether or not that country is able to assist the UK, and whether or not there is a bilateral or multilateral agreement. However where an agreement imposes specific conditions or procedures, the UK expects these to be adhered to.

The European Investigation Order ('EIO') is a European directive aimed at streamlining the process for MLA between participating EU Member States. It will introduce deadlines and

standardised EIO forms for requesting assistance.  The directive entered into force on 22 May 2014 and will be implemented in the UK in May 2017.  The UK will not accept EIOs until implementation in 2017.

## Reciprocity

The UK does not generally require reciprocity but would expect assistance from countries which are parties to relevant bilateral or international agreements with the UK.  The UK would also expect reciprocity from countries to which we give assistance without a treaty or an international agreement. Reciprocity is required in all requests for assistance in tax matters.

## Confidentiality

It is usual policy for central or executing authorities to neither confirm nor deny the existence of an MLA request, nor disclose any of its content outside government departments, agencies, the courts or enforcement agencies in the UK without the consent of the requesting authority, except where disclosure is necessary to obtain the co-operation of the witness or other person concerned.

Where public statements are made by an overseas authority about the assistance it is requesting from the UK, the central authority should be notified so that they may respond appropriately to any media or public enquiries.

In general, requests are not shown or copied to any witness or other person, nor is any witness informed of the identity of any other witness. In the event that confidentiality requirements make execution of a request difficult or impossible, the central authority will consult the requesting authorities. In cases where disclosure of a request or part thereof is required by UK domestic law in order to execute the request, it will normally be the case that the requesting authority will be given the opportunity to withdraw the request before disclosure to third parties is made.

From time to time the Home Office releases statistical data on the number of MLA requests sent and received.  Such data is only released where to do so would not breach the confidentiality of any individual request.  See this link for published data.

## Collateral Use - Requests Made by the UK

Evidence obtained **by the UK** pursuant to an MLA request to a foreign authority will not be used for any purpose other than that specified in the original request without the consent of appropriate overseas authority (see section 9(2) of Crime (International Co-operation) Act 2003 ('CICA') and also the Court of Appeal decision of Crown Prosecution Service & Anor v Gohil [2012])*."*

## Collateral Use - Requests Made to the UK

Where a requesting authority wishes to use evidence obtained **from the UK** for a different purpose to that stated in the original MLA request, or to share the evidence with a third country, a formal request to do so must be made in writing by the original requesting state to the relevant

central authority in the UK (unless otherwise stated in a relevant treaty). The additional request must contain the following information:

| Request to Use Evidence for other Purposes |
|---|
| ✓  The central authority's reference number for the original request; |
| ✓  What evidence is to be used/shared; |
| ✓  How this evidence will be used/shared; |
| ✓  Why this evidence is needed in this new/other investigation / court proceedings. |

## Law Enforcement (Police) Cooperation

This entails police and other law enforcement officers in a requesting state asking for the assistance of law enforcement agencies in the UK to gather information for an investigation. This can be an easier and quicker way to obtain intelligence and evidence, as it does not require a request.  In many countries' legal systems, information collected by UK law enforcement agencies is directly admissible as evidence in criminal trials abroad (with the permission of UK law enforcement).  For instance countries which do not require evidence to be sworn by witnesses in a court under their domestic law can consider using law enforcement cooperation to request information to be used as evidence.

If direct contact between a foreign police force and a UK police force has not already been established, the NCA should be contacted with the request.  The NCA acts as the UK Interpol gateway for all incoming and outgoing police enquiries.  The NCA will forward requests through the Interpol network to the relevant police force or other law enforcement agency who will then execute the request, subject to any data sharing agreement.

The following UK law enforcement agencies can receive enquiries directly from law enforcement officers in foreign jurisdictions (in some cases this will be subject to a data sharing agreement or memorandum of understanding):

- UK Liaison Bureau at Europol via the NCA;
- Interpol via NCA;
- UK Visas & Immigration;
- HMRC;
- Police Services;
- Financial Intelligence Units;
- Asset Recovery Offices.

Back to Contents

# SECTION 2: How to Make a Request

Requests for MLA must be sent to the relevant central authority, unless they are requests for service of process or mutual recognition of a freezing or confiscation order.

Requests which do not comply with the requirements set out below may be returned to the requesting authority and may not be executed.

## Is MLA Appropriate?

In some cases a MLA request is not suitable because:

- The material can be obtained **voluntarily** without any assistance from UK authorities (although UK law enforcement should be notified);
- The material can be obtained via **law enforcement cooperation** (see above) because it is only required for intelligence purposes or material obtained in this way is admissible as evidence.

It is often desirable for overseas authorities to obtain intelligence prior to making an MLA request.  This can help improve the quality of the MLA request, and makes it less likely that a request will be returned to the requesting authority for lack of information.

Requests for assistance in **civil matters** are dealt with by a different process, as explained in Section 5  of this guidance.

## Who Can Send an MLA Request

Any competent body under the law of the requesting country may issue a request to the UK. This includes a court exercising criminal jurisdiction or a prosecuting authority outside the UK.

## De Minimis Requests

UK executing authorities have limited public resources available, and *de minimis* (trivial or disproportionate) MLA requests may be refused by the Home Office on these grounds if they meet the criteria (or comparable criteria) set out below.

| De Minimis Requests |
| --- |
| ✓    There has been a financial loss or gain or damage of less than **£1,000**; or |
| ✓    The alleged offence was committed more than **10** years ago (and there is no, or insufficient, explanation for the delay in investigation or prosecution). |

When considering the criteria the following factors are also taken into account:

- Whether there are any aggravating factors;
- Whether a UK prosecuting authority would send a request in similar circumstances;
- Whether the request is for a 'coercive' measure;
- Whether there are resource implications for a number of executing authorities.

**Please note that Scotland and HMRC do not apply a *de minimis* policy**.

## Dual Criminality

The UK generally only requires dual criminality for search and seizure, production orders (including banking evidence), and restraint and confiscation. A *'conduct'* based approach is taken, i.e. the conduct underlying the alleged offence is considered when assessing dual criminality, rather than seeking to match the exact same term or offence category in both jurisdictions.

Failure to pay child maintenance is not a criminal offence in the UK.  The UK cannot use any investigative measure which requires dual criminality to provide the evidence requested.   As an alternative to MLA evidence can also be obtained using civil routes (see below) and EU Member States may seek enforcement through Council Regulation No 4/2009.

## Language of Requests

All requests should be in English.  If an English translation is not provided, is incomplete, or is not carried out to a high professional standard, the request will be sent back to the requesting authority.

## Format of a Request

Requests must always be made in writing.  A request can be sent electronically (e.g. in a 'pdf' format via email), but an original hardcopy may be requested.

| Information to be Included in a Request |
| --- |
| ✓ Headed notepaper of the issuing authority must be used; |
| ✓ Details of the authority making the request, including the name, telephone number and email address (where available) of a contact person; |
| ✓ For requests not made in the English language; one signed version of the non-English request **and** one translation of the request into English. |
| ✓ The original request must be signed by the issuing authority; |
| ✓ Purpose for which assistance is sought; |

- ✓ The type of assistance requested and any additional information that is required for requests for this type of assistance (see Section 3 of these guidelines);

- ✓ A description of the offences charged or under investigation and sentence or penalty;

- ✓ A copy of the legislation that criminalises the conduct in the requesting country and gives information on the offence, penalty and rights a person may be afforded;

- ✓ A summary of the facts giving rise to the request and connection to the UK;

- ✓ Details of the person or persons (including legal persons) named in the request including, where available, address/location, date of birth and nationality (*if confidential this can be sent separately to the request*);

- ✓ Whether the person(s) named in the request are witnesses, suspects or victims;

- ✓ Whether the evidence requested is exculpatory;

- ✓ The connection between the evidence requested and the offence under investigation or proceedings. A clear *nexus* must be established.  This goes further than just stating that the requested material is relevant to the case.

- ✓ Relevant dates e.g. date of court hearing (reason for special urgency or attention should be included in the covering letter of request);

- ✓ Details, including the telephone number and e-mail address if available, of any UK law enforcement agency or officers who are familiar with the investigation (including, if relevant, the names of UK based operations which the requesting authority is aware of);

- ✓ If applicable, the title of the relevant convention or bilateral treaty under which the request is being made (please see this link for conventions and treaties the UK is party to);

- ✓ If applicable, details of any media attention, sensitivities or reasons for high profile interest in the case;

- ✓ If the death sentence is a possible sentence or penalty for the offence under investigation, an assurance that such a sentence will not be carried out or will be commuted;

- ✓ If applicable, the reference numbers of any linked requests.

Failure to provide the fullest information possible may result in delays or in a request not being executed in whole or in part.  Please see our website for example request templates.

## Transmission

The UK does not require requests to come via diplomatic channels and central authorities are content to receive requests directly.  However, the requesting authority will need to comply with its own domestic laws relating to the transmission of requests. Requests to:

- Home Office can be sent requests via post / courier or fax/email;
- HMRC can be sent via post or email;
- Crown Office can be sent via post, email, courier or fax.

EU Freezing/Confiscation orders for property can be sent to the PPSNI, CPS, SFO via post/courier or fax/email.

Please note that email transmission of requests is not secure.

Procedural documents can be served on affected individuals directly by post.  Please see further details on this in Section 3

## Where to Send MLA Requests

| England & Wales and Northern Ireland Should Be Directed To: | |
|---|---|
| UK Central Authority<br>International Criminality Unit<br>Home Office<br>3rd Floor Seacole Building<br>2 Marsham Street<br>London<br>SW1P 4DF<br><br>*For requests for civil forfeiture see section 5* | Fax: +44 20 7035 6985<br>Tel: +44 20 7035 4040<br>Email: UKCA-ILOR@homeoffice.gsi.gov.uk |

| Scotland Should Be Directed To: | |
|---|---|
| International Co-operation Unit<br>Crown Office<br>25 Chambers Street<br>Edinburgh<br>EH1 1LA | Tel: +44 131 243 8152<br>Fax: +44 131 243 8153<br>Email: coicu@copfs.gsi.gov.uk |

OFFICIAL

| Tax and Fiscal Customs Matters In England & Wales and Northern Ireland Should Be Directed To: | |
|---|---|
| Criminal Law Advisory Team<br>HM Revenue and Customs<br>Solicitor's Office<br>Room 2E/10<br>100 Parliament Street<br>London<br>SW1A 2BQ | Fax: +44 207 147 0433<br>Email: mla@hmrc.gsi.gov.uk |

| Crown Dependency or Overseas Territory Should Be Directed To: |
|---|
| The relevant authority listed at this link. |

Orders to freeze or confiscate property (except terrorist property) under Council Framework Decision 2003/577/JHA or Council Framework Decision 2006/783/JHA must be sent to the relevant **prosecuting authority** in the UK.  Orders to freeze evidence or terrorist property must be sent to the relevant central authority (above).

| Orders to freeze or confiscate property in England & Wales under Council Framework Decision 2003/577/JHA or Council Framework Decision 2006/783/JHA: | |
|---|---|
| Crown Prosecution Service<br>Proceeds of Crime<br>Rose Court<br>2 Southwark Bridge<br>London<br>SE1 9HS<br><br>For complex fraud, bribery and corruption cases:<br><br>Serious Fraud Office (SFO)<br>Proceeds of Crime<br>Serious Fraud Office<br>2–4 Cockspur Street<br>London<br>SW1Y 5BS | |

| **Orders to freeze or confiscate property in Scotland under Council Framework Decision 2003/577/JHA or Council Framework Decision 2006/783/JHA:** | |
|---|---|
| International Co-operation Unit<br>Crown Office<br>25 Chambers Street<br>Edinburgh<br>EH1 1LA | Tel: +44 131 243 8152<br>Fax: +44 131 243 8153<br>Email: coicu@copfs.gsi.gov.uk |

| **Orders to freeze or confiscate property in Northern Ireland under Council Framework Decision 2003/577/JHA or Council Framework Decision 2006/783/JHA:** | |
|---|---|
| Public Prosecution Service for Northern Ireland (PPSNI)<br>High Court & International Section<br>Belfast Chambers<br>93 Chichester Street<br>Belfast<br>BT1 3JR | |

## Timescales

The Home Office will consider an MLA request within 30 days of receipt, and the Crown Office within three working days. However, depending on the nature of the request this may not always be possible.  All central authorities will take into account any reasons for urgency which are clearly stated in the request.  Failure to follow the advice in these guidelines may also delay the acceptance and execution of the request.

## Queries about Requests

Once a central authority has received a request for MLA the request will be logged and given a reference number. In England, Wales and Northern Ireland a caseworker will be assigned to the case. HMRC handle these requests centrally within their team. In Scotland the case will be allocated to a Procurator Fiscal Depute (Scottish Prosecutor).

The requesting authority will be written to with the details of the person dealing with their case. Any subsequent correspondence relating to the MLA request should be sent to the correct caseworker/ HMRC team/ Procurator Fiscal Depute and should always quote the central authority's reference number.

## Urgent Requests

If a request is urgent the central authority will try to deal with the request as quickly as possible.

| Urgent Requests |
| --- |
| ✓ **Do not mark a request as urgent unless it is urgent;** |
| ✓ Detail why a request is urgent, for example: somebody is being detained in custody; somebody is due to be released from custody; pre-trial court appearances or trial dates; there is an immediate risk to individuals; risk of dissipation of assets etc; |
| ✓ Provide the dates of any deadlines which need to be met. |

## Cost of Executing Requests

Ordinarily the UK will meet the costs of executing a request. Exceptions include:

- fees and reasonable expenses of expert witnesses;
- the costs of establishing and operating video-conferencing or television links in England, Wales and Northern Ireland (Scotland does not charge for television links), and the interpretation and transcription of such proceedings;
- costs of transferring persons in custody;
- costs of obtaining transcripts of proceedings and judges' sentencing remarks; and
- costs of an extraordinary nature agreed with the requesting authority (these will be agreed before costs are incurred);
- costs of legal representation during a suspect interview where the requesting authority states that a defence lawyer must be present.

## Notification Where Assistance is No Longer Required

Should the requested assistance no longer be required, the central authority should be informed immediately, quoting the central authority reference number.

## Linked Requests

Requests which relate to a previous request can be sent to the central authority as a linked (including supplementary) request.

| Information to Include in a Linked Request |
| --- |
| ✓ A statement that this request is linked to a previous request; |
| ✓ the central authority's reference number for the previous request; |

> ✓ All the information relevant to a standard MLA request (see above), plus any further information relating to the specific type of additional request.

## Refusal of MLA Requests

In practice the UK accedes to most requests received and in general there is a presumption that MLA will be provided where all the requirements of the investigative measure under UK law have been met.  However, the central authorities retain a wide discretion when considering whether to accede to a request.

| Possible Grounds for Refusal Include: |
|---|
| ✓ The request relates to an investigation or prosecution which is politically motivated; |
| ✓ The execution of the request would prejudice the sovereignty, security or other essential interests of the UK; |
| ✓ The execution of the request would prejudice the *ordre public* of the UK (this includes the risk that the death penalty will be imposed for the crime under investigation); |
| ✓ The request is *de minimis*; |
| ✓ The request relates to a person who, if proceeded against in the UK for the offence for which assistance is requested, would be entitled to be discharged on the grounds of a previous acquittal or conviction *(*double jeopardy*)*; |
| ✓ The request relates to an offence that the UK regards as an offence under military law, which is not also an offence under ordinary criminal law; |
| ✓ There are substantial grounds for believing that the request has been made for the purpose of investigating, prosecuting or punishing a person on account of his/her race, gender, sexual orientation, religion, nationality, ethnic origin or political opinions or that person's position may be prejudiced for any of those reasons; |
| ✓ The request is for a coercive or intrusive measure for which the UK requires dual criminality and in respect of which there is no equivalent UK offence. |

Further information on how the UK considers human rights issues in the context of the provision of assistance can be found in the Overseas Security & Justice Assistance (OSJA) guidance.

Back to Contents

# SECTION 3: Types of Assistance

This section details the forms of assistance the UK can provide and the specific information which should be included in requests.

## Service of Process

Procedural documents may be sent **directly** by the requesting authority to the persons in the UK to whom they relate. The UK strongly encourages direct transmission of procedural documents to persons by post, unless this is not legally possible under the domestic law of the requesting authority.

Under Article 5 of the EU Mutual Assistance Convention 2000 (MLAC), EU Member States must send procedural documents directly to the person concerned, unless one of the reasons in Article 5(2) applies.  Failure to do so may result in the request being returned to the requesting authority.

## Service via a Central Authority

In line with sections 1 and 2 of CICA, a request may be made to the Home Office or the Crown Office for the service of procedural documents (e.g. a summons or judgment) issued by a court or authority in the requesting state in relation to criminal proceedings.  HMRC is not a central authority for the purpose of the service of documents.

The central authority will serve the documents by post, or personally by hand if requested. Where personal service is specifically requested, the central authority can arrange for the document to be served by the police.

Most requests for service of process via a central authority will be accepted if the requirements set out below are met.  There may be other requirements to meet in particular cases, and requesting authorities are therefore urged to provide detailed information including:

| Requests for Service of Process |
| --- |
| ✓  EU Member States must explain why they are unable to serve the document directly; |
| ✓  Details of any law/procedure in the requesting state which require the service of process to be via a central/judicial authority in the requested state; |
| ✓  Specific instructions as to whether the documents **must** be served by hand.  If no such instruction is provided the documents will be served by post; |
| ✓  All dates of hearings or other deadlines should be stated clearly within the request; |

| |
|---|
| ✓   The documents should be received by the central authority at least **six weeks** prior to court hearings or other deadlines involved; |
| ✓   Details of any allowances and expenses to which a person asked to appear in proceedings abroad is entitled; |
| ✓   The address of the court where the proceedings are to take place; |
| ✓   The name and telephone number of an official of the overseas court from whom the person asked to appear can seek further information if necessary. |

The person on whom a summons or judgment is served will be asked to sign a receipt and return it to the Home Office for transmission to the requesting authority, but the person is under no obligation to do so.  The Home Office will advise the requesting authority whether the document has been delivered or whether it was not possible to serve the document.

In Scotland, the summons or judgment shall be served upon the person by either a police officer or police employee. The police officer or employee shall complete an execution of service which shall be returned to the requesting authority. The person shall be asked to sign a receipt, but is under no obligation to do so.

Back to Contents

# Statements and Interviews

| Type of Assistance | Law Enforcement Cooperation | Judicial Cooperation |
|---|---|---|
| Witness Statements | ✓ | ✓ |

If the requesting authority's legal system does not require evidence to be taken on oath, the request should ask for the evidence to be obtained from a witness, suspect or victim as a statement. These interviews require the **consent** of the individual.  Please see the website for a template request for witness evidence.

Requests for witness statements can be made on a law enforcement  basis, rather than through MLA.  The police or other law enforcement officers are not authorised to administer oaths in the UK. In the UK evidence can only be made subject to an oath before a court (see below). Unless a request specifically requires that evidence be given on oath, testimony will be taken without an oath being administered.  This is considerably quicker and less resource intensive.

In cases where an individual refuses to co-operate with a statement or interview, it may be possible to compel the individual to attend court.  However, the witness can exercise the right against self-incrimination and refuse to answer any questions at court.

| **Requests For Statements (Testimony) to be Taken by the Police** |
|---|
| ✓  Whether the individual to be interviewed is a witness, suspect or victim; |
| ✓  Individual's address or, if not known, last known address; |
| ✓   A list of questions to be asked should be provided; |
| ✓  Language(s) which the person understands should be provided if possible; |
| ✓  Details of any procedure to be followed in taking the evidence, including any rules on privilege which a witness or suspect may be entitled to claim. This will be complied with as far as is possible under UK law; |
| ✓  Any caution or formal notification of rights which should be given to the witness under the law of the requesting state. This will be complied with as far as is possible under UK law. |

## Contacting Witnesses in the UK

Witnesses **must not** be contacted directly by letter, fax or telephone unless UK law enforcement agencies have first been informed, except where service of process can be served directly.   Once UK law enforcement has been notified, the witness can be contacted directly.

Back to Contents

# Evidence on Oath/in Court

| Type of Assistance | Law Enforcement Cooperation | Judicial Cooperation |
|---|:---:|:---:|
| **Witness Statements on Oath** | X | ✓ |

Requests for evidence can be 'sworn' or taken on oath by a court.  It is also possible to take evidence in court without an oath (schedule 1, paragraph 3 of CICA provides that "*the court may take evidence on oath*") if this is allowed under the law of the requesting state.

Individuals can be compelled to attend court for the purposes of MLA requests under section 15 of CICA.  However, schedule 1 of CICA makes it clear that a person cannot be compelled to give any evidence before a nominated court which he could not be compelled to give in criminal proceedings in the UK or if the criminal proceedings were being conducted in the requesting state.  Of particular relevance in this context are:

* The privilege against self-incrimination; and
* The provisions in UK domestic law that a person *charged* with an offence cannot be compelled to give evidence in his own trial.

Requesting authorities must give careful consideration as to whether an individual should be compelled to attend court where they have already been uncooperative with the investigation/proceedings (for instance if they already refused to give a statement to the police).  An individual can be compelled to attend court but may exercise the right against self-incrimination and remain silent so compelling a witness to court is unlikely to increase the chances of any evidence being obtained in some circumstances.  Ultimately it is for the central authority to decide whether to nominate a court and the central authority will take into account all the circumstances when making this decision including details of any legal or procedural requirements under their domestic law and the effect on the investigation or prosecution if a person is not compelled to court.

In Scotland a Procurator Fiscal (Scottish Prosecutor) requires to crave a warrant from a Sheriff (lower judge) to cite the witness/suspect to the relevant Sheriff Court. The Sheriff is independent from the prosecution service and may refuse to grant the warrant if there is no dual criminality, insufficient facts provided in the letter of request or for any other reason he may see fit.

| Request For Evidence (Testimony) To Be Taken Before A Court |
|---|
| ✓   Expressly state whether the evidence must be taken before a court, and whether this must be on oath; |
| ✓   Explain why it is necessary for the evidence to be taken in court, rather than by the police interview; |
| ✓   Provide a list of questions to be asked; |

| ✓ | Provide details of the requesting authority's procedure to be followed in taking the evidence, including any rules on privilege which a witness or suspect may be entitled to claim.  This will be complied with as far as is possible under UK law. |
| --- | --- |
| ✓ | Any caution or formal notification of rights which should be given to the witness or suspect under the law of the requesting state. Central authorities will aim to comply with such procedures and requirements as far as is possible under UK law. |

## Privilege

If an individual claims privilege under the law of the requesting state, and if the requesting authority concedes the claim, evidence will not be taken.  Where the claim is not conceded, the evidence may be taken but will not be sent to the requesting authority until a court in the requesting state rules on the matter.

Back to Contents

# Hearings via Video or Telephone Conference

| Type of Assistance | Law Enforcement Cooperation | Judicial Cooperation |
|---|:---:|:---:|
| **Hearing by Video Conference** | X | ✓ |
| **Hearing by Telephone Conference** | X | ✓ |

## Video Conference (Television Link)

The basis for hearing witnesses in the UK through video conferencing is section 30 of CICA. The video link must be made from UK court premises in the presence of a UK judge, in order to protect the rights of the witness. There is no legal framework for the use of commercial, private premises or Embassies.

If the requesting authority is unable to dial in to the UK, they will be charged for video conferencing by the Home Office. Scotland does not invoice requesting authorities for the costs of the television link.

| **Requests For Evidence Via Video Conference (Television Link)** |
|---|
| ✓  A minimum of **eight weeks'** notice given prior to the date of the video conferencing hearing; |
| ✓  A proposed time of day that the link should be heard and the length of time that the witness is required; |
| ✓  Email address of someone in the requesting authority that can be contacted at short notice who will provide technical assistance; |
| ✓  Sufficient information to enable the central authority to identify and contact the witness(es); |
| ✓  Details of the requirements of the procedure to be followed in taking the evidence, including any rules on privilege which a witness may be entitled to claim; |
| ✓  Any caution or formal notification of rights which should be given to the witness under the law of the requesting state; |
| ✓  Details (if known at the time) of the technical requirements for establishing the link to ensure compatibility. |

OFFICIAL

## Telephone Conference

The basis for hearing witnesses in the UK through telephone conferencing is section 31 and schedule 2 of CICA. This section only applies to relevant participating countries.

| Requests For Evidence Via Telephone Conference |
| --- |
| ✓   A minimum of eight weeks' notice given prior to the date of the telephone link hearing; |
| ✓   Confirmation that the witness has expressly agreed to give evidence via telephone link; |
| ✓   The name and address of the witness to be questioned; |
| ✓   Details of the procedure to be followed in taking the evidence, including any rules on privilege which a witness may be entitled to claim; |
| ✓   Any caution or formal notification of rights which should be given to the witness or suspect under the law of the requesting state. |

Back to Contents

# Asset Tracing

| Type of Assistance | Law Enforcement Cooperation | Judicial Cooperation |
|---|---|---|
| **Banking evidence** | ✓ | X |

All asset tracing should be completed on a police cooperation basis through financial intelligence units (FIUs).

There is **no central record of bank accounts held in the UK**.  This information should be requested, where possible, on a police cooperation basis before making an MLA request.

See below for information on how to obtain banking evidence by production order, and requests for restraint and confiscation of assets.

Back to Contents

# Production Orders

| Type of Assistance | Law Enforcement Cooperation | Judicial Cooperation |
|---|---|---|
| **Production Order** | X | ✔ |

Production orders are used to obtain "special procedure material".

| Examples of Special Procedure Material (non-exhaustive) |
|---|
| ✔ Communications content;<br>✔ Banking evidence;<br>✔ Journalistic material;<br>✔ Records held by accountants etc. |

In England & Wales and Northern Ireland, once a request for special procedure material is accepted by the central authority, the central authority will issue a direction under section 13 of CICA for the police to apply to the court for a production order under section 16 of CICA (production orders can also be obtained under Article 6 of the Proceeds of Crime Act 2002 (External Investigations) Order 2014 for the purposes of restraint and confiscation investigations).   The application for a production order will be made in the Crown Court to a circuit judge and will normally be applied for on notice (*inter partes* to the organisation that holds the information) to ensure that the respondent (for example a bank) has an opportunity to be represented in the court that is hearing the application. Where the organisation does attend, the central authority will consult the requesting authority to ensure that the execution of the request will not breach any confidentiality requirement.  A production order under the Proceeds of Crime Act 2002 (External Investigations) Order 2014 can be obtained *ex parte*.

In Scotland, a direction is sought from the Requested Advocate under section 13 of CICA to crave a search warrant under section 18 of CICA.  The respondent will then submit the relevant documentation and witness statements to the police in answer to the warrant which in turn will be forwarded to the requesting authority.

## Banking Evidence

Asset tracing should be completed before making a request for banking evidence (see above, regarding asset tracing).

| Information to be Obtained *Before* Making a Request for Banking Evidence |
|---|
| ✔ Name of the financial institution; |
| ✔ Name of the account holder; |
| ✔ Number of the account; |

| |
|---|
| ✓  The address and/or number ("sort code") of the branch of the bank where the account is held |

Once this information has been obtained the request should contain the following:

| Request for Banking Evidence |
|---|
| ✓  Details of account(s) (as above); and |
| ✓  Grounds for believing that banks in the UK holds account(s) and to the extent available, which banks may be involved; and |
| ✓  The time period over which the information is sought (an explanation must be given for any period that falls outside the time framework for the investigation); and |
| ✓  Specific documents required (e.g. account opening information, bank statements, etc) and relevance to the investigation; and |
| ✓  Confirmation that there is dual criminality. |

Please be aware that the retention policies of banks vary at around **5 years**.

| |
|---|
| Please note that the Home Office receives a high volume of requests to obtain banking evidence in England & Wales and this may reduce the speed at which a request is executed. |

## Communications Content

Communications content can also be obtained via production order.  Note it is possible to request the preservation of content via law enforcement cooperation pending the execution of an MLA request.

For communications data, see below.

Back to Contents

OFFICIAL

# Search and Seizure

| Type of Assistance | Law Enforcement Cooperation | Judicial Cooperation |
|---|---|---|
| **Search & Seizure** | X | ✓ |

It is not sufficient for a request to be accompanied by a search warrant issued by an authority in the requesting state.  Central and executing authorities in the UK do not have the authority to issue warrants themselves; they must be in a position to convince a court to issue a search warrant.  In addition, requests for search and seizure require **dual criminality**.   If the evidence requested can be obtained without obtaining a search warrant, the central authority will seek an alternative method of execution instead.

The following types of material cannot be the subject of a search warrant:
- "excluded material" which includes confidential journalistic records, medical records and samples, counselling records;
- "legally privileged" which includes material relating to advice provided by a solicitor to his client unless this material is held with the intention of furthering a criminal purpose;
- "special procedure material" which includes other confidential business records and non-confidential journalistic material (see production orders above).

| Requests For Search and Seizure of Evidence |
|---|
| ✓  Conditions in section 8 of Police and Criminal Evidence Act 1984 ('PACE') can be met; |
| ✓  There is dual criminality; |
| ✓  A full description of the criminal conduct concerned; |
| ✓   The full address/addresses, or a precise description of any place to be searched; |
| ✓  A full explanation as to where the specific material or type of material is expected to be recovered from, such as within the house, garage premises, garden premises; |
| ✓  Details of how the place to be searched is connected with the case/suspected person; |
| ✓  Full details of the specific material or type of material to be seized (it will not usually be sufficient to simply state "evidence relevant to the investigation") and; any information available which indicates that the material requested may be held on computer; |
| ✓  Why the material requested is considered both relevant and important evidence to the investigation or proceedings; |
| ✓  Why the evidence is thought to be on the particular premises or in the possession of the particular person concerned; |
| ✓  Why the material would not be produced to a UK court if the natural or legal person |

| |
|---|
| holding the material were ordered to do so by means of a witnesses summons (this is to help ensure that applications to the UK courts for search warrants are successful and less likely to fail or be subject to subsequent legal challenge); |
| ✓ Appropriate undertakings for the safekeeping and return of any seized evidence; |
| ✓ If it is anticipated that law enforcement officers may come across 'special procedure material' during the course of a search; |
| ✓ Details of any officials from the requesting state who wish to participate in the search and why their presence is necessary (note – we prefer officers from the requesting state to be involved in the search where possible); |
| ✓ Any other information which would be of operational use to the executing authority in connection with the execution of the request. |

Please note the search and seizure template form on the website. Please also refer to Section 4 on attendance of overseas law enforcement officers.  It is also recommended that consideration of a search warrant is discussed on a law enforcement basis prior to the MLA request being made.

## Seizure of Computers and other Storage Media

Under UK law, computers or images of them will not be provided direct to a requesting authority. This includes smartphones and other storage media; as such devices will always contain material which was not covered by the original warrant.

Upon seizure, these devices are examined by the UK police officers, who will ensure that the material was included in the original warrant and does not contain material which is legally privileged. Following a search of the material by UK police, it may be necessary for officers from the requesting state to visit the UK to be involved in examination.

Where further information is required about the offence or the material to be seized, depending on the particular circumstances, the Home Office will inform the requesting authorities without delay.  Notification of interested parties is not required where an application is made for a search warrant.

## Search and Seizure Requests in Scotland

The Crown Office in Scotland may direct a Procurator Fiscal (prosecutor) to obtain a search warrant from a Sheriff before the relevant Sheriff Court.  With regard to the dual criminality test, the equivalent crime in Scotland must be an offence punishable by imprisonment (section 18(1)(b) of CICA).  Neither the police nor HMRC can apply for a search warrant in Scotland. Interested parties are not notified of the application for a search warrant.  The concept of legal privilege applies equally in Scotland.

Back to Contents

# Communications Data

| Type of Assistance | Law Enforcement Cooperation | Judicial Cooperation |
|---|---|---|
| Communications Data | ✓ | ✓ |

Communications data refers to the "who", "when", "where" and "how" of a communication but not the **content** of the communication.  This includes text messages and emails etc as well as phone calls.  Communications data can be requested on a law enforcement cooperation basis.

If the request is accepted, the request will be referred to the relevant law enforcement agency, who will obtain the evidence under Chapter 2 of the Regulation of Investigatory Powers Act 2000 ('RIPA') as necessary.

If the requesting authority requires the evidence to be sworn in court by an employee of the communications company, the central authority will then nominate a court to receive the evidence under section 15 of CICA (see above for evidence on oath).

Communications companies in the UK normally retain IP data for between **30 days and 12 months**.  Billing and communications data (cell site) is held for **6-12 months** for pay as you go phones and up to **six years** for contract phones. Specialised services such as cell dumps are normally only available for a matter of days. It is possible to request the preservation of communications data via law enforcement cooperation.

| Requests for Communications Data |
|---|
| ✓  Type of data required e.g. subscription details, incoming calls, outgoing calls; |
| ✓  An explanation of the time periods of the data required; |
| ✓  Why the information is necessary to the investigation. This must include the offence under investigation, how the specific person is linked to the investigation and how the data requested links to the offence and the person specified; |
| ✓  Why the data is proportionate to the investigation e.g. what it is expected to show and how the data will be used; |
| ✓  Information concerning the source of the telephone numbers; |
| ✓  The exact date, time and place of the incident under investigation; |
| ✓  Full details of the individuals involved in the incident and the roles they played; |
| ✓  Why the objectives of the investigation cannot be achieved by other means; |
| ✓  Explain whether the privacy of any individual not under investigation will be infringed, and why the circumstances of the case justify such an intrusion. |

## Telephone and Address Information

If authorities require telephone numbers for businesses or people for non-evidential purposes it may be possible to locate information on 192.com or the BT Phonebook.  This can provide information on a person or business phone number or address across different directories.

Back to Contents

# Live Interception of Communications

| Type of Assistance | Law Enforcement Cooperation | Judicial Cooperation |
|---|:---:|:---:|
| **Interception of Communications** | ✗ | ✓ |

International requests for assistance in the interception of communications can **only** be made under Articles 17 to 22 of the MLAC. RIPA provides the UK legal framework governing the interception of the content of the communications in the course of its transmission.  Interception can only be authorised for the purpose of preventing/detecting serious crime.

| **Serious Crime** |
|---|
| ✓ the offence or one of the offences is one in which a person who has attained the age of twenty-one (eighteen in England and Wales) and has no previous convictions could reasonably be expected to be sentenced to imprisonment for a term of three years or more; or |
| ✓ the conduct involves the use of violence, results in substantial financial gain or is conduct by a large number of persons in pursuit of a common purpose. |

Before authorising a request restrictions may be imposed to prevent disclosure, in any proceedings outside of the UK, of intercept product which could not be adduced in the UK. The central authority must be satisfied that restrictions are in force which would prevent disclosure of, in any proceedings outside of the UK, intercept product which could not be adduced in the UK (i.e. it can only be used for intelligence purposes).

| **Requests For Interception** |
|---|
| ✓   The request is from a competent authority in a requesting state that has implemented the MLAC (EU Member States, Norway or Iceland); |
| ✓   Confirmation that a lawful interception order or warrant has been issued in connection with a criminal investigation in the requesting state; |
| ✓   An assurance that any intercept product will be handled in accordance with any restrictions imposed; |
| ✓   Interception is necessary for the purpose of preventing or detecting serious crime; |
| ✓   Why the objectives of the investigation cannot be achieved by other means; |
| ✓   Interception must be proportionate to what is sought to be achieved; and |
| ✓   Explain whether the privacy of any individual not under investigation will be infringed, and why the circumstances of the case justify such an intrusion. |

# Restraint (Freezing)

| Type of Assistance | Law Enforcement Cooperation | Judicial Cooperation |
|---|---|---|
| Restraint of Assets | X | ✓ |

## Requests for Restraint of Assets *(not under EU mutual recognition instruments, see below)*

The purpose of a request for restraint is to preserve the value of assets located in the UK for confiscation. Before making a request to restrain assets located in the UK, the following should be completed so that the relevant information is included in the request for restraint:

| *Before* Making a Request for Restraint of Assets |
|---|
| 1.  Use law enforcement cooperation to identify and trace assets in the UK (see above); and, |
| 2.  Use, as necessary MLA, to obtain **evidence** of assets in the UK (e.g. to obtain banking evidence as referred to above). |

Once this information has been obtained a request for restraint can be made to the court. Note that requests for restraint assets also require **dual criminality.**  The following should be included in the request:

| Request for Restraint of Assets |
|---|
| ✓  There is dual criminality; |
| ✓  Details of the ongoing (**not concluded**) criminal investigation into an acquisitive crime or money laundering or proceedings in the requesting state; |
| ✓  The material facts of the case – including any defence or explanation put forward by the defendant/suspect, any facts that have come to light after the restraint order was made. This will enable the court to decide whether to maintain or discharge the restraint order; |
| ✓  Why there is reasonable cause to believe that the defendant/accused named in the request has benefited (by obtaining money or other property) from his criminal conduct; |
| ✓  Why there are reasonable grounds to believe that the property may be needed to satisfy an external order which has been or which may be made; |
| ✓  Why the order is necessary – include an explanation that will enable the court to consider whether there is a real risk that the identified property will be dissipated if no order is made; |
| ✓  The name, address, nationality, date and place of birth and present location of the |

suspect(s) or defendants whose criminal conduct has given rise to anticipated confiscation or forfeiture proceedings;

✓ Details of the property to be restrained in the UK, the persons holding it and the link between the suspect and the property (this is important if the property to be restrained is held in the name of a third party such as a company or another person);

✓ Whether prior assistance in the case (including asset tracing assistance) has been provided and, if so, details of the UK authorities involved and details of the assistance already received. If assistance has not previously been sought or provided this should be clearly stated;

✓ Where applicable, details of any court orders already made in the requesting state against the suspect in respect of his or her property and a duly authenticated copy of that order certified by a person in his or her capacity as a judge, magistrate or officer of the relevant court of the requesting state, or by an official of the requesting authority. If no court orders have been made, this should be clearly stated;

✓ If possible, brief details of all known property held by the suspect <u>outside</u> the UK;

✓ State clearly that property in the UK must be restrained because there are insufficient property/assets elsewhere. If there are property/assets located elsewhere but these cannot be restrained, this must be clearly stated by the requesting authority;

✓ State clearly whether or not you object to the UK courts allowing the defendant access to restrained funds for use as living and legal expenses and **that you are content for the UK courts to assess what is a reasonable amount**.

Without this information a court will be unable to grant an order to effectively restrain assets or register an order to confiscate assets to allow it to be enforced.  If the request is accepted, the central authority will decide who will execute a request and will refer it to the relevant executing authority (the CPS or the SFO) accordingly. The executing authority will consider the application before applying to the court to register the external order, in line with the Proceeds of Crime Act 2002 (External Requests and Orders) Order 2005 and section 447 of the Proceeds of Crime Act 2002.

The executing authority dealing with the request will make the appropriate applications to the Court for the assets to be restrained and will inform the requesting authority as soon as this has been done. A copy of the restraint order must be served upon the suspect and any other person known to be affected by it as soon as is practicable.  The UK courts will require an acknowledgement that this has been completed otherwise the UK court may discharge the order. Note – a court may also discharge the order if proceedings are not started or the confiscation order is not registered within a reasonable time.

See the website for an example request in a restraint and confiscation case. Further guidance on restraint is available in the UK Guide to Asset Recovery.

There are also powers to assist to freeze property in relation to non-conviction based confiscation cases. Further details can be found in section 5.

## Requests for Restraint of Instrumentalities of Crime

"Instrumentalities of crime" covers any property which has been, is or is intended to be used in connection with the commission of an offence.  Section 4 of the Criminal Justice (International Co-operation) Act 1990 (Enforcement of Overseas Forfeiture Orders) Order 2005 ('2005 Forfeiture Order') enables a UK court to make a restraint order based on an overseas request.

| Request for a Restraint of Instrumentalities of Crime |
|---|
| ✓ Relevant instrumentalities in England and Wales have been identified; and |
| ✓ A criminal investigation or proceedings for an offence have been started in the country from which the request was made; and |
| ✓ Be for the purpose of facilitating the enforcement of any 'external forfeiture order' (made by a court in a designated country for the forfeiture and destruction, or the forfeiture and other disposal, of anything in respect of which a relevant offence has been committed or which was used or intended for use in connection with the commission of such an offence) which has yet to be made; and |
| ✓ Provide reasonable grounds for believing that as a result of that investigation or those proceedings an external forfeiture order may be made against the person named in the request; and |
| ✓ The material facts of the case – including any defence or explanation put forward by the defendant/suspect, any facts that have come to light after the restraint order was made. This enables the court to decide whether to maintain or discharge the order; |
| ✓ Why the order is necessary – include an explanation that will enable the court to consider whether there is a real risk that the identified property will be dissipated if no order is made; |
| ✓ The name, address, nationality, date and place of birth and present location of the suspect(s) or defendants whose criminal conduct has given rise to anticipated confiscation or forfeiture proceedings; |
| ✓ Details of the property to be restrained in the UK, the persons holding it and the link between the suspect and the property (this is important if the property to be restrained is held in the name of a third party such as a company or another person); |
| ✓ Whether prior assistance in the case (including asset tracing assistance) has been provided and, if so, details of the UK authorities involved and the assistance already received. If assistance has not previously been sought or provided this should be clearly stated; |

- ✓  Where applicable, details of any court orders already made in the requesting state against the suspect in respect of his or her property and a duly authenticated copy of that order certified by a person in his or her capacity as a judge, magistrate or officer of the relevant court of the requesting state, or by an official of the requesting authority. If no court orders have been made, this should be clearly stated;

- ✓  If possible, brief details of all known property held by the suspect outside the UK;

- ✓  State clearly that property in the UK must be restrained because there are insufficient property/assets elsewhere. If there are property/assets located elsewhere but these cannot be restrained, this must be clearly stated by the requesting authority;

- ✓   State clearly whether or not you object to the UK courts allowing the defendant access to restrained funds for use as living and legal expenses and that they are content for the UK courts to assess what is a reasonable amount.

[Back to Contents](#)

# EU Freezing Order

A Freezing Order is an order for the protection of evidence or property, pending its transfer to a requesting state.  Requests made under Council Framework Decision 2003/577/JHA are mutual recognition measures.

Part 2 of, and Schedules 1 and 2 to, the Criminal Justice and Data Protection (Protocol No. 36) Regulations 2014 ("the Regulations") came into force on 3 December 2014.  The Regulations transpose the Freezing Order measure in relation to property.

Freezing Orders for property must be sent by Member States to the relevant UK prosecuting authority for the purposes of recognition and execution (except terrorist property which must be sent to a central authority, see section 2).

| Freezing Orders: |
|---|
| ✓ From an EU Member State; |
| ✓ The order must relate to criminal proceedings instituted in the Member State, or to a criminal investigation being carried out there; |
| ✓ The order must prohibit dealing with property which is in the UK, and which the appropriate overseas court or authority considers to be property that has been or is likely to be used for the purposes of criminal conduct, or is the proceeds of criminal conduct (both tainted and untainted assets); |
| ✓ The criminal conduct must not be an act of terrorism, or for the purpose of committing terrorism; |
| ✓ Accompanied by a certificate which is: <br> a) signed by (including electronically) or on behalf of the court or authority which made or confirmed the order, <br> (b) include a statement as to the accuracy of the information given in it <br> (c) translated into English; |
| ✓ The order must be accompanied by another court order from the requesting state, for the confiscation of the property, or, if this is not available, the certificate must indicate when such an order is likely to be sent. |
| ✓ State clearly whether the case is a fraud and/ bribery and corruption case, whether it is of a serious and complex nature, and whether the activity is capable of affecting the reputation of the requesting state as a safe place to do business (this will aid the UK's administration of these cases, by ensuring that they are dealt with by the appropriate authority). |

Back to Contents

# Confiscation & Forfeiture

| Type of Assistance | Law Enforcement Cooperation | Judicial Cooperation |
|---|---|---|
| **Confiscation of Assets** | X | ✓ |

## Requests for Confiscation *(not under EU mutual recognition instruments, see below)*

Confiscation is the registering and enforcing of the requesting state's order against assets in the UK.  Requests for confiscation of assets require **dual criminality**.

| **Request for Confiscation of Property** |
|---|
| ✓  There is dual criminality; |
| ✓  Person named in the order is convicted and no appeal is outstanding in respect of that conviction; |
| ✓  The order is in force and is not subject to appeal; |
| ✓  All or a certain amount of the sum payable under the order remains unpaid in the territory of the requesting state or that other property recoverable under the order remains un-recovered there; |
| ✓  The order has the purpose of recovering property, or the value of property received in connection with the commission of crime; |
| ✓  The order made can be enforced outside the jurisdiction of the requesting state. |
| ✓  The original or duly authenticated copy of the order must be provided with the request; |
| ✓  The material facts of the case – including any defence or explanation put forward by the defendant/suspect, any facts that have come to light after the restraint order was made. This will enable the court to decide whether to maintain or discharge the restraint order; |
| ✓  Why the order is necessary – include an explanation that will enable the court to consider whether there is a real risk that the identified property will be dissipated if no order is made; |
| ✓  The name, address, nationality, date and place of birth and present location of the suspect(s) or defendants whose criminal conduct has given rise to anticipated confiscation or forfeiture proceedings; |
| ✓  Details of the property to be confiscated in the UK, the persons holding it and the link between the suspect and the property (this is important if the property to be restrained is held in the name of a third party such as a company or another person); |

- ✓ Whether prior assistance in the case (including asset tracing assistance) has been provided and, if so, details of the UK authorities involved and details of the assistance already received. If assistance has not previously been sought or provided this should be clearly stated;

- ✓ Where applicable, details of any court orders already made in the requesting state against the suspect in respect of his or her property and a duly authenticated copy of that order certified by a person in his or her capacity as a judge, magistrate or officer of the relevant court of the requesting state, or by an official of the requesting authority. If no court orders have been made, this should be clearly stated;

- ✓ If possible, brief details of all known property held by the suspect outside the UK.

If the request is accepted, the central authority will decide who will execute a request and will refer it to the relevant authority accordingly, in line with the Proceeds of Crime Act 2002 (External Requests and Orders) Order 2005. Once referred, and provided that all the conditions are satisfied, the executing authority can ask the court to register the external order. This enables the payment to be enforced.

See the website for an example request in a restraint and confiscation case. Further guidance on restraint is available in the UK Guide to Asset Recovery.

## Asset Disposal

Once the assets have been realised they will be disposed of under one of three processes:

- Stolen State asset cases that fall under the provisions of the United Nations Convention Against Corruption (UNCAC) will be returned to the recipient country less reasonable expenses;
- Cases that do not fall under the provisions of UNCAC can be shared with the recipient country if it enters into an asset sharing agreement with the UK. The UK seeks to establish asset sharing agreements wherever possible (under Article 16 of Council Framework Decision 2006/783/JHA there  is an asset share of 50:50 in cases involving 10,000 Euros and above);
- If there is no formal agreement with a country or territory, there are administrative arrangements that allow assets to be shared on a case-by-case basis.

In the absence of any asset sharing agreement the assets will be retained by the UK and disposed of according to domestic law.

## Forfeiture of Instrumentalities of Crime

Forfeiture orders allow for the deprivation or disposal of property which has been used, or which is intended to be used, in the commission of a criminal offence.  The 2005 Forfeiture Order allows for a forfeiture order which has been made overseas to be enforced in the UK. The 2005

Order applies to any offence that corresponds to or which is similar to, an offence under the law of England and Wales. Different Orders apply to Scotland and Northern Ireland.

| Request for Forfeiture of the Instrumentalities of Crime |
|---|
| ✓ Person named in the order is convicted and no appeal is outstanding in respect of that conviction; and |
| ✓ The order is in force and is not subject to appeal. |
| ✓ The original or duly authenticated copy of the order must be provided with the request; |
| ✓ The material facts of the case – including any defence or explanation put forward by the defendant/suspect, any facts that have come to light after the restraint order was made. This will enable the court to decide whether to maintain or discharge the restraint order; |
| ✓ Why the order is necessary – include an explanation that will enable the court to consider whether there is a real risk that the identified property will be dissipated if no order is made; |
| ✓ The name, address, nationality, date and place of birth and present location of the suspect(s) or defendants whose criminal conduct has given rise to anticipated confiscation or forfeiture proceedings; |
| ✓ Details of the property to be forfeited in the UK, the persons holding it and the link between the suspect and the property (this is important if the property to be restrained is held in the name of a third party such as a company or another person); |
| ✓ Whether prior assistance in the case (including asset tracing assistance) has been provided and, if so, details of the UK authorities involved and details of the assistance already received. If assistance has not previously been sought or provided this should be clearly stated; |
| ✓ Where applicable, details of any court orders already made in the requesting state against the suspect in respect of his or her property and a duly authenticated copy- of that order certified by a person in his or her capacity as a judge, magistrate or officer of the relevant court of the requesting state, or by an official of the requesting authority. If no court orders have been made, this should be clearly stated; |
| ✓ If possible, brief details of all known property held by the suspect outside the UK; |
| ✓ State clearly that property in the UK must be forfeited because there are insufficient property/assets elsewhere. If there are property/assets located elsewhere but these cannot be restrained, this must be clearly stated by the requesting authority. |

# EU Confiscation Order

Part 2 of, and Schedules 1 and 2 to, the Criminal Justice and Data Protection (Protocol No. 36) Regulations 2014 ("the Regulations") came into force on 3 December 2014.  These transpose the Confiscation Order measure.

Confiscation Orders must be sent by Member States to the relevant UK prosecuting authority for the purposes of recognition and execution (see section 2).

| Confiscation Order |
| --- |
| ✓  Must be from an EU Member State; |
| ✓  The property must have been used for the purposes of criminal conduct, or must be the proceeds of criminal conduct (both tainted and untainted assets); |
| ✓  A person must have been **convicted** of that criminal conduct in the requesting state; |
| ✓  The confiscation order must have been made at the **conclusion** of the proceedings that gave rise to the conviction; |
| ✓  Must be accompanied by a certificate which is<br>a) signed by (including electronically) or on behalf of the court or authority which made or confirmed the order,<br>(b) include a statement as to the accuracy of the information given in it<br>(c) translated into English; |
| ✓  State clearly whether the case is a fraud and/ bribery and corruption case, whether it is of a serious and complex nature, and whether the activity is capable of affecting the reputation of the requesting state as a safe place to do business (this will aid the UK's administration of these cases, by ensuring that they are dealt with by the appropriate authority). |

Back to Contents

# Temporary Transfer of a Prisoner for Purposes of Investigation

| Type of Assistance | Law Enforcement Cooperation | Judicial Cooperation |
|---|:---:|:---:|
| Temporary Prisoner Transfer | X | ✓ |

Under section 5 of the Criminal Justice (International Cooperation) Act 1990, a UK prisoner can be *temporarily* transferred abroad to assist with overseas criminal investigations and proceedings.  Prisoners cannot be transferred from the UK without their consent.  Requests for temporary transfer of prisoners must be sent to a central authority.

Before agreeing to the transfer the relevant central authority must be satisfied that the presence of the prisoner is not already required in that part of the UK for the purposes of investigations or proceedings and that the transfer would not prolong the prisoner's period of detention.

Where the transfer is agreed with the requesting authority, the central authority arranges for:
• the prisoner in custody to be taken to a departure point in the UK and to be delivered into the custody of a person representing the requesting authority;
• for the prisoner to be escorted back to the UK by the requesting authority;
• the subsequent transfer of the prisoner in custody from the arrival point in the UK to his or her place of detention.

The costs of escorting and accommodating prisoners from their point of departure from the UK to their point of return to the UK are met by the requesting authority.

The central authority will liaise with the respective prison services in England and Wales, Scotland and Northern Ireland to ensure that the prisoner is taken to a point of departure in the UK and then taken back into prison custody when the requesting authority has completed their process.

## England & Wales

National Offender Management Services ('NOMS') would expect a **minimum of three weeks' notice** to arrange the transfer of a prisoner from an English prison to a point of departure. This is because transfer between prisons takes place by scheduled booked transport and advance notice is required. The contact details for the relevant part of NOMS who can deal with these requests can be found below.

## Northern Ireland

Where a request has been made for a transfer of a prisoner from Northern Irish custody the prison service in this jurisdiction will manage the handover of prisoners in line with their operational instructions. For further information contact the Northern Ireland Prison Service.

## Scotland

Where a request is to be made for the transfer of a prisoner in a Scottish prison, the request must be sent to the Scottish Central authority which will liaise with the Scottish Prison Service. When it is agreed the request will be executed the Scottish Prison Service would also expect a minimum of three weeks notice for the same reasons as set out above.

However, given the cost, staff resources and risk assessment in ensuring safety to the public in transferring a prisoner across borders, consideration should be given to the prisoner giving evidence by video conference or, as has happened in Scotland, the prisoner giving evidence before a Scottish Court constituted with the prosecution, defence and judge of the requesting jurisdiction.

For further information contact the International Cooperation Unit at the Crown Office or for practical arrangements on the return of the prisoner, the Scottish Prison Service.

| Temporary Transfer of Prisoners to the Requesting State to Assist an Investigation |
| --- |
| ✓  Dates on which the presence abroad of the prisoner is required, including the dates on which the court or other proceedings for which the prisoner is required will commence and are likely to be concluded; |
| ✓ Information for the purpose of obtaining the prisoner's consent to the transfer and satisfying the UK authorities that arrangements will be made to keep the prisoner in secure custody such as:<br>• whether the prisoner will have immunity from prosecution for previous offences;<br>• details of proposed arrangements for collecting the prisoner from and returning the prisoner to the UK;<br>• details of the type of secure accommodation in which the prisoner will be held in the requesting state;<br>• details of the escort available abroad to and from the secure accommodation. |

## Transfer of a Prisoner for the Purpose of Serving the Remainder of a Prison Sentence *(non-MLA Prisoner Transfer)*

The MLA central authorities do not deal with requests for the transfer of prisoners for purposes of ensuring they serve the remainder of a prison sentence *or any* other non-MLA basis.  The authority for these requests is (and general queries on all types of prisoner transfer):

| England & Wales Contact Details for Prisoner Transfer Requests | |
|---|---|
| Cross Border Transfers Section<br>Offender Safety, Rights and Responsibilities Group<br>Post Point 4.10<br>4th Floor, Clive House<br>70 Petty France<br>London<br>SW1H 9EX | Tel: +44 300 0 475691<br>Fax: +44 300 0 476857<br>Email:<br>ERDForeignNationals@noms.gsi.gov.uk |

| Northern Ireland Contact Details for Prisoner Transfer Requests | |
|---|---|
| Establishment Support Branch<br>Room 211, Dundonald House<br>Upper Newtownards Road<br>Belfast BT4 3SU | Tel: +44 2890 525310<br>Fax: +44 2890 525315 |

| Scotland Contact Details for Prisoner Transfer Requests | |
|---|---|
| International Cooperation Unit<br>Crown Office and Procurator Fiscal Service<br>25 Chambers Street<br>Edinburgh<br>EH1 1LA | Tel: +44 131 243 8152<br>Fax: +44 131 243 8153 |
| The Scottish Prison Service<br>Legal Services Branch<br>Calton House<br>5 Redheughs Rigg<br>Edinburgh<br>EH12 9HW | Tel: +44 1312448745 |

Back to Contents

# Passport Information and Immigration Status

| Type of Assistance | Law Enforcement Cooperation | Judicial Cooperation |
|---|---|---|
| **Passport Records/Immigration Status** | ✓ | ✓ |

Requests for this information can be sought through law enforcement cooperation.  All requests will be referred to HM Passport Office or UK Visas and Immigration.

| Passport Information / Immigration Status |
|---|
| ✓  Details of person (name, date of birth and place of birth if known); |
| ✓  Passport number (current and previous); |
| ✓  State whether the request relates to the prevention and detection of crime or apprehension of prosecution of an offender; |
| ✓  How the data being sought links to the offence being investigated. |

Back to Contents

# Transfer of Proceedings

| Type of Assistance | Law Enforcement Cooperation | Judicial Cooperation |
|---|---|---|
| **Transfer of Proceedings** | X | ✓ |

Proceedings should take place in the jurisdiction where the majority of the criminality occurred, or, if this is not possible, where the harm was felt. In practice, the UK's common law system of adversarial proceedings and live witness examination tends to be incompatible with a process in which the proceedings had been transferred from another jurisdiction.

The UK is not a signatory to the Council of Europe Convention on the Transfer of Proceedings in Criminal Matters 1972 and has a reservation to the Council of Europe Convention on Mutual Assistance in Criminal Matters 1959 which states that "*…the Government of the United Kingdom reserves the right not to apply Article 21*".

However, incoming requests to transfer proceedings to or from the UK are decided on a case by case basis according to the criteria set out below.

**Note: A UK bank account is not a sufficient link to transfer proceedings to the UK.**

| Request for Transfer of Proceedings |
|---|
| ✓  The offence leading to the criminal proceedings must constitute a crime in both the UK and the requesting state; |
| ✓  There must be evidence of a clear and established link to the UK; |
| ✓  The request must be made as soon as is reasonably possible. Any unreasonable delay (more than 5 years) must be explained; |
| ✓  The request is not *de minimis*  (see above); |
| ✓  Must be translated into English (including supporting documents). |

If accepted, the request will be forwarded to the relevant police force, and the case will be given the same status and priority as would be given to a similar domestic case.  In England, Wales and Northern Ireland it is up to the police to decide whether an investigation is conducted.  In Scotland the Crown Office will instruct the police to commence an investigation and shall consider the results before any decision on prosecution is made.

## Article 17 of the Directive Establishing Minimum Standards on the Rights, Support and Protection of Victims of Crime

Article 17 of this directive deals with victims of crime in an EU Member State other than where they reside, who wish to make a complaint in their Member State of residence if they are unable to do so where the offence was committed or, in the event of a serious offence, they do not wish to do so. The following criteria are applied to requests to transfer proceedings to the UK under this provision:

| Request for Transfer of Proceedings under Article 17 |
| --- |
| ✓  Explain why the Member State in which the complaint was made does not have competency to investigate the complaint; and |
| ✓  Explain why the victim was unable to make such a complaint in the state where the offence was committed; *or* in the case of a serious offence, the victim did not wish to do so. |
| ✓  An English translation should be provided |

If accepted, the request will be forwarded to the relevant police force to consider opening an investigation, and the case will be given the same status and priority as would be given to a similar domestic case.

## Spontaneous Exchange of Information

| Type of Assistance | Law Enforcement Cooperation | Judicial Cooperation |
| --- | --- | --- |
| **Spontaneous Exchange** | ✓ | ✓ |

If a central authority has information relating to a criminal offence which may lead or relate to an MLA request by a country, the UK may exchange this information with a country without the need for a request. This is possible under Article 7 of the MLAC 2000 and under bilateral MLA treaties. Spontaneous exchange of information is also possible via police cooperation routes and will be channelled through the NCA.

Back to Contents

# Criminal Records

| Type of Assistance | Law Enforcement Cooperation | Judicial Cooperation |
|---|---|---|
| Criminal Records | ✓ | ✓ |

Although requests for criminal records may form part of a wider formal MLA request, requesting authorities **should not** obtain criminal record information from the Home Office (England, Wales and Northern Ireland) or the Crown Office (Scotland).

## EU Member States

The bases for exchanging criminal records between EU Member States are Framework Decision 2009/315/JHA, on the organisation and content of the exchange of information extracted from the criminal record between Member States together with Council Decision 2009/316/JHA on the establishment of the European Criminal Records Information System (ECRIS) in application of Article 11 of Framework Decision 2009/315/JHA. These are collectively known as ECRIS (European Criminal Record Information System).

EU Member States must make requests for criminal records via their own central authority for the exchange of criminal records.  The criminal record information provided through ECRIS is transmitted through a standardised format which facilitates automatic translation and recognition of criminal offences.

If a central authority (Home Office or Crown Office) receives a request for criminal records from an EU Member State the request will be redirected to the UK Central Authority for the Exchange of Criminal Records. For more background information please visit the HOME OFFICE-ECR website.

## Requests from Non-EU Member States

Requests for criminal records from countries outside of the EU should be made on a law enforcement cooperation basis via the NCA.

Back to Contents

# Judicial Records

| Type of Assistance | Law Enforcement Cooperation | Judicial Cooperation |
|---|---|---|
| Judicial Records | ✓ | ✓ |

In England & Wales and Northern Ireland, all criminal cases start in the Magistrates Court. More serious cases are then transferred to the Crown Court. The name of the court of conviction and date of sentence can be found on the criminal record (see above).

In Scotland, the prosecutor can raise proceedings in the Justice of the Peace Court or Sheriff Court.  Cases related to serious crime begin in the Sheriff court and can then continue to proceed there or be transferred to the High Court of Justiciary.

## Court Certificates

EU Member States should request court certificates **directly from the relevant court**. A copy of the criminal record (see above) must be attached to the request, which will also contain the name of the sentencing court. Contact details for courts in England & Wales, Northern Ireland, or Scotland can be found on their respective websites.

Requests from EU Member States sent to the Home Office or Crown Office in error, will be referred to the relevant court (if the name of the court has been provided by the requesting state), but this may delay a substantive response.

Non- EU Member States must request court certificates from the relevant central authority (Home Office or Crown Office).

| A Court Certificate from a Magistrates Court (Memorandum of Conviction) may Contain: |
|---|
| ✓   Defendant's personal details; |
| ✓   Whether or not the defendant was represented; |
| ✓   Type of offence; |
| ✓   Plea; |
| ✓   Type of sanction (including length of sentence imposed). |

| A Court Certificate from a Crown Court (Certificate of Conviction) may Contain: |
|---|
| ✓   Defendant's personal details; |

| |
|---|
| ✓  Details of the legal representatives for the defence and prosecution; |
| ✓  Whether the defendant was in detention during the trial; |
| ✓  Date of hearing; |
| ✓  Date of conviction; |
| ✓  Date of sentence; |
| ✓  Charges against the defendant, plea and verdict. |

| If s*pecifically* Requested the Court may also Provide |
|---|
| ✓  Information on the use of an interpreter during the proceedings, and if not used, the reasons why; |
| ✓  The identity of defence counsel in the proceedings; |
| ✓  The status of any appeal against Conviction(s)/ Sentence(s). |

## Trial Transcripts / Sentencing Remarks

A Magistrates Court is not a court of record and there will be no court transcript.

In England, Wales and Northern Ireland, more serious criminal cases are dealt with by a Crown Court and a full court transcript of the trial may be available.   However, there is no written note made and the comments are recorded on a tape which is kept for a certain number of years. Transcripts obtained in this way can be very expensive, as the transcription service is provided by a private company who charge by the folio (72 words). This is regardless of whether the request is from a UK authority or from an overseas authority.

In Scotland, a transcript of proceedings is only retained in cases of serious crime where the accused is indicted before a Judge / Sheriff and a jury.  However, the transcript is the property of the court and an application must be made to the Court for that to be disclosed.  The cost of any transcript will be high and will require to be met by the requesting judicial authority.

Rather than obtain the whole trial transcript, it is possible to obtain a smaller part of the transcript known as the 'sentencing remarks'.  This is the final part of the trial where the judge at the Crown Court makes a summary of the case when sentencing the defendant.  However, this is not the same as the formal written summary used in other jurisdictions and the level of detail the judge will provide (e.g. about the circumstances of the offence and the conduct of the defendant) will vary from case to case.

To obtain a transcript or sentencing remarks a request can be made to the Home Office or Crown Office for a transcript of the tapes, but please be aware that transcripts are not retained indefinitely.  However, in most cases the costs of obtaining the transcripts or sentencing remarks must be met by the requesting authority, as they are considered costs of an extraordinary nature. Further details on the provision of transcripts, including prices, can be found on the form EX107 on the Ministry of Justice website.

| Request for Transcripts or Sentencing Remarks |
| --- |
| ✓ A copy of the ECRIS report if the request is from an EU Member State, or if the request is from a non-EU member state, the following information must be included:<br>• Name of relevant court<br>• Date of hearing<br>• Date of sentence |
| ✓  Written confirmation in English that such evidence is required; |
| ✓ Written confirmation in English that the requesting authority will pay for the costs of acquiring such evidence. |

If these confirmations are not received at the time of the request a substantive response is likely to be delayed.

Back to Contents

# Other Requests for MLA

## Intimate/Non-Intimate Samples (including DNA)

| Type of Assistance | Law Enforcement Cooperation | Judicial Cooperation |
|---|---|---|
| Intimate/Non-Intimate Samples | ✓ | ✓ |

The UK can consider an MLA request for intimate samples to be taken from an individual; however the UK has no power to compel an individual to do so.

A DNA profile which is held by the UK will generally not be transferred abroad as part of an MLA request for the purposes of matching it to a crime scene profile.  If a request for DNA matching is made, the requesting authority should send the crime scene profile to the UK for matching.  This enables it to be checked against the individual concerned and against other profiles held on the UK's National DNA database.  This can be made on a law enforcement cooperation basis.

## EU Freezing Order for Evidence

| Type of Assistance | Law Enforcement Cooperation | Judicial Cooperation |
|---|---|---|
| EU Freezing Order | X | ✓ |

Sections 20-25 of CICA implemented the in relation to evidence.  Freezing orders in relation to evidence must be sent to the Home Office (see section 2).

| Freezing Order (evidence) |
|---|
| ✓  The request must be from an EU Member State; |
| ✓  The request must be to freeze evidence (not property/money); |
| ✓  The request must be in relation to a listed offence category; |
| ✓  The request must be accompanied by a certificate which is<br>a) signed by (including electronically) or on behalf of the court or authority which made or confirmed the order,<br>(b) include a statement as to the accuracy of the information given in it<br>(c) translated into English (or, if appropriate, Welsh); |

Under section 24 of CICA, once evidence has been frozen, it must be retained until instructions have been given to transfer the evidence to the requesting state, or to release it.

## Account Monitoring Orders

| Type of Assistance | Law Enforcement Cooperation | Judicial Cooperation |
|---|---|---|
| **Account Monitoring Order** | **X** | ✓ |

An Account Monitoring Order enables transactions on a particular account to be monitored for a specified period of time.  Account Monitoring Orders under section 35 of CICA **only** apply to an investigation into serious criminal conduct by a 'participating country'.

| **Requests For An Account Monitoring Order under CICA:** |
|---|
| ✓  The request must be from a participating country (EU Member States, Iceland, Japan, Norway, Switzerland and the USA); |
| ✓  Specify a 'financial institution' and accounts held there by a specified person; |
| ✓  There is an investigation in the requesting state into criminal conduct; |
| ✓  The order is sought for the purposes of the investigation. |

Account Monitoring Orders can also be requested under Part 5 of the Proceeds of Crime (External Investigations) Order 2014 (POCA Order).

| **Requests For An Account Monitoring Order under Part 5 of the POCA Order:** |
|---|
| ✓  Account Monitoring Orders may be obtained for the purpose of an external investigation, relating to a criminal investigation or criminal proceedings in the requesting state provided that the investigation falls within the definition set out in Part 8 of POCA 2002: |
| ✓  Part 8 of POCA deals with two types of investigation.<br>✓  A confiscation investigation, which is an investigation into:<br>   a)  whether a person has benefited from his criminal conduct, or:<br>   b)  the extent or whereabouts of his benefit from his criminal conduct.<br>✓  A civil recovery investigation, which  is an investigation into:<br>   a)  whether property is recoverable property or associated property<br>   b)  who holds the property, or<br>   c)  its extent or whereabouts. |
| ✓  The request must show that there  are reasonable grounds for believing that the account information requested is of substantial value to the external investigation, and that it is in the public interest for the account information to be provided; |

## Company Records

| Type of Assistance | Law Enforcement Cooperation | Judicial Cooperation |
|---|---|---|
| Company Records | ✓ | ✓ |

Information about a company in England, Wales, Northern Ireland or Scotland, that is **not** required as evidence can be found on the Companies House website.  This website has a search engine called WebCHeck.  Companies House also offer other services to help find information on companies, some of which is free.

## Joint Investigation Teams

A Joint Investigation Team ('JIT') is an investigation team set up for a set period, based on an agreement between two or more States and/or competent authorities, for a specific purpose.  A JIT allows team members from different countries to share information without the need for a formal letter of request, and is therefore an *alternative* to MLA.

A JIT can be considered in cases where close and co-ordinated co-operation between countries is required to effectively and efficiently investigate crime.  A JIT can be set up under:
- Council Framework Decision on Joint Investigation Teams (2002/465/JHA);
- Convention on Mutual Assistance in Criminal Matters between the Member States;
- Second Additional Protocol to the Council of Europe Convention on Mutual Assistance;
- Convention on Mutual Assistance and Cooperation between Customs Administrations;
- A specific bilateral/multilateral agreement with the participants in the JIT.

Eurojust has developed an expertise in drafting and negotiating JITs and is also a potential source of funding for JITs. Prosecutors or courts contemplating a JIT with the UK are advised to consult their National Desk at Eurojust to discuss the case further.

Back to Contents

# SECTION 4: Foreign Officers in the UK

If officers from the requesting state wish to be present during the execution of an MLA request, for example to participate in a search or to be present during the interview of a witness, this must also be requested in the request.  The central authority, in conjunction with the authority executing the request in the UK, will determine whether this is appropriate.

The requesting authority must give reasons as to why officers from the requesting state should be present.  For example, if it is a very complex case, or is a request for search and seizure, it may be beneficial to have the investigating officer present.  However, if it is not justified for a foreign officer of the requesting state to be present this request will be refused.

Even if the presence of foreign officers is accepted and the request is successfully executed, evidence will not automatically be given to the officers who were present during the execution. However, it may on occasion be practical to transfer the evidence through accompanying officers.  In this case UK police must seek authorisation from the central authority.

## Notifying the UK of Law Enforcement Officers Travelling to the UK

The relevant local police force in the UK **must** be made aware in advance if officers for the requesting state are due to travel to the UK.  However, if the requesting state is unable to contact / identify the local police force, the NCA can assist and pass on notification.

The relevant local police force in the UK **must** also be notified in advance if foreign law enforcement officers are due to travel to the UK to conduct official **business even if this is not pursuant to MLA**.

Back to Contents

# SECTION 5: Civil Matters

MLA requests to the UK relating to civil matters are dealt with by different authorities than those dealing with MLA requests in criminal matters.

Under the Civil Procedure Rules Part 34, MLA requests to and from the UK relating to civil matters are dealt with separately from criminal requests. Obtaining evidence from other jurisdictions in respect to civil litigation (which encompasses commercial litigation) is included within the Evidence (Proceedings in Other Jurisdictions) Act 1975.

| Requests for the Service Of Documents in International Civil Cases in England & Wales and Northern Ireland | |
|---|---|
| Premium Service Legalisation Office<br>Foreign & Commonwealth Office<br>Old Admiralty Building<br>London<br>SW1A 2PA | Tel:     +44 207 008 4126<br>Email:   SOPEnquiries@fco.gov.uk |

| Request for Taking Evidence in Civil Matters in England & Wales and Northern Ireland |
|---|
| Foreign Process Section<br>Room E16<br>Royal Courts of Justice<br>Strand<br>London<br>WC2A 2LL |

| Request For Assistance for all Civil Matters in Scotland |
|---|
| The Central Authority & International Law Team<br>Scottish Government Justice Directorate<br>St Andrew's House<br>Regent Road<br>Edinburgh<br>EH1 3DG |

# Civil Forfeiture of Assets

Requests for a civil forfeiture of assets should be sent to a specialist team in the Home Office:

| Request for Civil Forfeiture | |
|---|---|
| Strategic Centre for Organised Crime - Pursue<br>Office for Security and Counter-Terrorism<br>Home Office<br>6th Floor Peel Building<br>2 Marsham Street<br>London<br>SW1P 4DF | Tel: +44 20 7035 1567 |

## European Judicial Network in Civil and Commercial Matters

There is a European Judicial Network (EJN) for Civil and Commercial Matters website where a large quantity of information about the Member States, Community law, European law and various aspects of civil and commercial law can be found.

Back to Contents