Case No: CL-2019-000644 and CL-2017-000583

**IN THE HIGH COURT OF JUSTICE**
**QUEEN'S BENCH DIVISION**
**COMMERCIAL COURT**

Royal Courts of Justice, Rolls Building
Fetter Lane, London, EC4A 1NL

[2020] EWHC 2197 (Comm)

Date: **3 July 2020**

Before :

**Mr Justice Waksman**

- - - - - - - - - - - - - - - - - - - - -

Between :

| | |
|---|---|
| **Eurasian Natural Resources Corporation Limited** | **Claimant** |
| - and - | |
| **Director of the Serious Fraud Office** | **Defendant** |
| | |
| **Eurasian Natural Resources Corporation Limited** | **Claimant** |
| -and- | |
| **(1) Dechert LLP** | |
| **(2) David Neil Gerrard** | **Defendant** |

- - - - - - - - - - - - - - - - - - - - -
- - - - - - - - - - - - - - - - - - - - -

**Anna Boase QC, Nathan Pillow QC, Tim Akkouh, Jack Rivett, Alyssa Stansbury and Freddie Popplewell** (instructed by **Hogan Lovells International LLP**) for the **Claimant**
**Simon Colton QC, James Segan QC, Tom Richards and Joyce Arnold** (instructed by **Eversheds Sutherlands LLP**) for the **Director of the Serious Fraud Office Defendant**
**Michael Bools QC, Simone Browne QC, Edward Harrison and Kyle Lawson** (instructed by **Clyde & Co LLP**) for the **Dechert LLP and David Neil Gerrard Defendant**

Hearing dates: **3rd July 2020**
- - - - - - - - - - - - - - - - - - - - -

# RULING

**RULING ON DISCLOSURE (1)**

1.      I hear what is said about the fact that parties who are co-operating properly would not need a direction necessarily that tells them to do something which they should do in any event.  However, this case has had a somewhat troubled history so far as disclosure is concerned.  The timetable is very tight; it cannot slip any further; and there has to be an orderly system in place to deal with any suggested extensions.  And I am not prepared simply to leave that to the parties.

2.      The SFO has already indicated that if it knows at an earlier stage, before 4 September, that will have problems it will let ENRC know.  But I think it right to have a direction that by 4 September, it either confirms that it is in a position to meet it, or it makes an application for an extension in respect of "the disclosure exercise or specific parts thereof".  Two weeks before the disclosure date, ie 18 September, it will know perfectly well whether it is going to have difficulties with that date.  That is the time to write to the other side and say, "We need an extension for the following reasons ..."  It also has to be done 14 days beforehand, because I have to see what to do about it if there's an argument.  And if, before 4 September, the SGO has asked for an extension and ENRC unreasonably refuses it then an application wil have to be made and there will be costs implications.

3.      So I'm going to order paragraph 11.2 with those modifications.

**RULING ON DISCLOSURE (2)**

4.      I have some sympathy with Mr Pillow's position on 11.3, but I am not going to make any order on rolling disclosure 3; and I am not going make any order which would follow it in 11.4, for these reasons.

5.      The absolutely critical date is 18 September.  I can see that it might be desirable for the ENRC to get something ahead of 18 September.  But even if it gets something, it's not going to be in a position to say, in advance of the 18 December and an analysis of the documents, that the disclosure is somehow defective, because that can't happen until it's got the complete disclosure.  So there's no usefulness there.

6.      Producing other reports or producing chronological lists of documents, while it might be desirable in a perfect world, is a distraction in my view.  And to be perfectly frank, I do not want the SFO to be distracted.  And the consequence of that, which Mr Colton will appreciate, is the less distractions there are, the less room for manoeuvre there will be on the part of the SFO if it tries to seek an extension by 4 September, because it can't be said that its work has had to be diverted elsewhere.

7.      So, for those brief reasons, I will not make any order on 11.3 and 11.4.

**RULING ON DISCLOSURE (3)**

8.      It is not being asked of me to direct that disclosure should be made of any relevant communications which are on the personal devices of either current or former employees.

That does raise the question of control.  There may be control, there may not, but it doesn't matter, because that's not the question that's being asked.  There may only have been limited circumstances in which this has happened, but particularly if former employees are going to be given evidence, I think there is force in Mr Pillow's point that we don't want all of this coming out at trial.

9.      I can see no reason at all why the SFO cannot enquire of its former employees whether there are any relevant communications which took place on their personal devices and whether those personal devices or those communications have been retained.

10.     That would then form part of the search, and the product of that search can be reported back to the claimant.  If the claimant then wants something further to be done, it's going to have to make an application.  But at least, like the other orders I've made, it gives some idea as to whether, if there is a problem about some further documents, we have some idea of the scale of it.

11.     So I will make the order in terms of making the necessary enquiries.

**RULING ON DISCLOSURE (4)**

12.    I understand what is being said in the letter, but on the other hand, the whole scale of this exercise has now been massively reduced, because it's not covering 92 months, it's covering five-and-a-half months.  I don't think that the extra expense that might be entailed, if it is entailed, in relation to other electronic documents is disproportionate.  So I will order it to cover all electronic documents.

**RULING ON DISCLOSURE (5)**

13.    Regardless of for whose benefit that statement in paragraph 32 was made, it rightly talked about the importance of ensuring and demonstrating objectivity.  What I will order is that by 4 pm on Friday 17 July -- that's two weeks time -- the SFO shall write to the claimant's solicitors setting out (a) the extent to which any member of criminal team QUT01 will be involved in the disclosure process; (b) if so, the nature and extent of that involvement; and (c) in respect of any such involvement, how it is to be supervised.

14.    That may prove, then, to be a molehill.  But, Mr Pillow, if any people on your side seriously think that's now raising a mountain, you can go back to them or you can make an application to the court.  But I think that's the proportionate way of dealing with it.

**RULING ON DISCLOSURE (6)**

15.    I will give some guidance on paragraph 12.5 of PD51U. I think it was designed with a fairly broad brush view, namely that either you disclose a document, which now means you produce it, or you object to production either because it should not be disclosed because it is privileged or because it cannot be produced because you have lost it.  I don't think the rules committee contemplated a situation where the production status of the relevant document might then change, either because of a considered decision later on to waive privilege, or because a lost document has come into the possession of the parties. It would seem to me to be absurd that if those sorts of situation arose, the party is then in breach of 12.5, even though it said, perfectly reasonably and properly, at the time, that the document would not be produced because it was privileged, so as to engage a relief-from-sanctions process, which seems to me to be unduly burdensome and a distraction.

16.    The definition of "disclosure" is clearly given in the first schedule to the practice direction.  And so if you say that it should not be produced because it's privileged, you have disclosed the document, and there can't be the blanket prohibition on reliance thereafter.

17.    I don't think that's a big problem because it's a relatively few cases usually where waiver of privilege is undertaken later on or lost documents are found, so it's outwith the control of 12.5, in my view. Otherwise, for example, if a party said, "I am not producing it because of privilege," and the other party challenged it, and then the court finds on a subsequent hearing that the document actually is not privileged, and one party says, "Oh, well, I'd like to rely on that now because actually it's quite useful," the 12.5 bar will apply. That cannot be right. It's easily sortable because the practice direction assumes that the parties will be proactive as to disclosure, as will the judge.  The obvious thing to do, and -- it may be that it becomes the standard direction -- is that the judge should prescribe a date by which any documents produced as a result of a waiver of privilege should be produced.

18.   In my judgment, subject to anything that Mr Colton wants to say -- and this goes for both sides -- any privileged documents which are to be produced because the party decides to waive privilege in them should be produced at the time when the witness statements are served.  By that stage, the evidential issues in the case will be much more considered than they may be at the stage of disclosure.  And so that's what I will rule.

## RULING ON AMENDMENT (1)

19.   The first substantial amendment I have to consider raises a limitation point.  That is because, if it's a new claim and if it doesn't arise out of the same or substantially the same facts, it should not be allowed: see CPR 17.4.  The event concerned was in 2011.  On the face of it, and subject to arguments under section 32, it would be time-barred now; indeed, it would have been time-barred at the commencement of this action.

20.   As some form of legitimate shortcut, the claimants say that the limitation point can be dealt with simply by a recital or a provision in the order which says that, for limitation purposes, the new claim should be deemed not to have been commenced until the date of the amendment application, because otherwise the doctrine of relation back would say that it was issued at the time when the original claim was commenced. There is an argument between the parties as to whether the court has the power to make such an order. And that is all that I am dealing with at this stage.

21.   It is certainly right to say that, as a matter of practice, the Commercial Court often deals with limitation points on amendment in this way.  Although, in my experience, it's largely the case where the parties have agreed.  I, as a judge, certainly don't recall having to deal with the underlying jurisdictional point.

22.   However, Mr Akkouh says there is a good basis for doing it in the decision of the Court of Appeal in *Mastercard v Deutsche Bahn*.  It's necessary to recite what is said first of all in the leading judgment of Lord Justice Sales, paragraph 4:

> "Mastercard have accepted in correspondence that the new claim can be introduced into the existing proceedings as an amendment which relates back to 7 August 2015, when the ... application to amend was served.  This was the approach adopted by Field J in [Morrison] ... to avoid the necessity of the claimants there having to commence a new claim with resultant waste of costs, where he had found that the new claim did not arise out of the same or substantially the same facts.  This result can be achieved either by the court refusing permission for an amendment unless the new pleaded claim itself in terms pleads the new cause of action only from that date or by the court making an order stipulating the relevant date for limitation purposes, which is what both sides invited the judge to do and again invite us to do, depending on what date we decide is the proper one."

23.   Just pausing there.  It is right to say that the parties seemed to be in agreement as to what the outcome should be.  And so it could be said that this is not really a matter addressed by the Court of Appeal.  But on the other hand, when one looks at paragraph 4, it is plain to me that Lord Justice Sales is not merely reciting an agreement between the parties, but is accepting (admittedly not after argument in a disputed case) the jurisdictional basis that the court can deal with the issue in this way; and that it is an alternative to what used to be thought to be the only option where a party could not bring themselves under 17.4 if there was an arguable limitation point, which is simply to start a new action and take their chances.  This is clearly expressed as an alternative way forward.

24.   Moreover, having said that, and then having looked at the issues in the case before him, on the question of whether it was the same or substantially the same facts - the judge

below had said it was, while Lord Justice Sales said that it was not - he then had to decide what should be done.  At paragraph 67 and deals with a sub-issue as to whether one takes the commencement period for the amendment being an earlier permission to amend or an application to amend in relation to limitation, which is a point effectively of detail, and in the course of that, he says that Mastercard say it should be 7 August, when the application to amend was served, on the footing they took the guidance given in that regard by Mr Justice Field.  And that is the position which Lord Justice Sales adopts. So he directs himself expressly as to how to deal with that.  And he ends by saying in paragraph 70 that he allows the appeal, and then orders that the relevant date for limitation is 7 August 2015.

25. I do not accept that if it had been thought by Lord Justice Sales that, whatever the parties agreed, there was some serious jurisdictional objection (not least because he referred to section 35), he would not have raised the point.  I therefore consider that that is sufficient for that to constitute a Court of Appeal decision by which I am bound.

26. As it so happens, I cannot see a case which is directly to the contrary. There is the case of *Gill*, which talks about the mandatory nature of the provision, but it wasn't dealing with the specific point. As to the other case, *Edwards v Golding*, I see how it was put by the Master and by the judge.  But that was a slightly different situation, even if the object had been the same, because the issue was whether one could simply say "without prejudice to a limitation defence", which formula does not really tackle the issue in any focused way. But if there was a conflict, then, in my judgment, the later Court of Appeal authority must govern.  And, indeed, the earlier Court of Appeal case hardly touched the topic, whereas Lord Justice Sales, in my judgment, did.

27. All of that said, the usual case where this formula is adopted is either because the party does not wish to argue "same or substantially the same facts", or it doesn't really matter, or it is clear that it does not arise out of the same or substantially the same facts; therefore one simply has a provision that says, so far as that amendment is concerned, the new claim is deemed to have been commenced on the date of the application to amend.

28. The formula proposed here somewhat more complex because it effectively says that the doctrine of relation back will apply unless (a) it is a new claim; and (b) if so, it does not arise out of the same or substantially the same facts. And whether that is so is put off until trial. That seems to me to be wrong in principle.  As Mr Colton has said, the analysis of "same or substantially the same facts" is critically and fundamentally to be based on what one can see in the pleadings.  So leaving it until trial is not the right approach.  Moreover, it becomes uncertain.

29. Mr Akkouh said that the point may not ultimately be taken or it may become irrelevant, because either section 32 will cover all the claims whenever they were made, or section 32 won't cover any of them when they're otherwise time-barred.  That may be the case, but I don't think that's a principled way forward.

30. It seems to me that the claimant has got to make its mind up whether it is content with the formula which says that the claim is deemed to have been made on whatever the date of the application to amend was, and leave it there on the basis that section 32 might still rescue it.  Or it has to positively argue that either it isn't a new claim, or, even if it is a new claim, it's same and substantially the same facts.

**RULING ON AMENDMENT (2)**

31. Let me just deal with the discretionary aspects of the amendment, which, subject to discretion, would be granted either on the basis that it's deemed to have commenced only a short time ago, or, if they succeed on "same and substantial facts", it would go back to the date of the action.

32. A first point, though not one particularly stressed by Mr Colton in argument, is that adding this factual matter will then cause an investigation into a different period of time relating to the claimant's knowledge or otherwise of the facts relevant to the claim which would not otherwise have to be investigated, and that it would involve looking at that knowledge for a period of another year or so. It seems to me there are two answers to that. First of all, on the claimant's case, it didn't know about what it describes as the "unauthorised" or the "wrongful investigation" until last year. So what it knew in 2014 or 2013 won't make any difference. But, secondly, I don't regard that as a matter which in any way could seriously detract from preparation of this case for trial or disruption. So there's nothing in that.

33. The main point stressed by Mr Colton is that either because of the way in which it has been pleaded or the law, it is just a hopeless claim and has no real prospect of success. I am not so interested in how the solicitor described the claim in a witness statement attempting to deal with the objections to the amendment from the SFO. Rather I concentrate on the pleading itself.

34. It seems clear enough to me that what is being said here is that there was an investigation properly so-called, in the sense that it was something which would otherwise require the threshold of reasonable belief, or reasonable suspicion, set out in section 1(3), to be fulfilled when in fact it had not been. And in order to demonstrate that this was something that could properly be described as an "investigation", they have pleaded various matters. They have pleaded the cultivation of a source, they've pleaded the fact that it was referred to as an "investigation", but that it was not disclosed to people that they say it should have been disclosed to. In other words, it was done, as it were, informally or on the quiet, when in fact there was no statutory basis for doing so.

35. That seems to me to be what is being said, without much gloss. I do not have much difficulty with paragraph 36.1A saying that it acted "at least by Mr Collins and involving at least the cultivation", and so on and so forth, if it is said  , at the moment, that this is the elements of the investigation, so-called, are.

36. I should say, and I make it plain now, that if it's to be said that there are other elements which support the existence of this investigation, they will need to be pleaded out: it can't just be left a later witness statement.

37. Then, otherwise what is said is that it acted in breach of the powers and the independence duties. The power duty is to act in accordance with its power. And if section 1(3) is not fulfilled, that is the argument. And because of this covert investigation, that that was a breach of the independence duty.

38. Of course, it is not being said that simply because there may have been a covert source contacted that that would constitute an investigation which would require section 1(3) compliance. What the claimant is doing is relying on a number of matters, saying if you add them all up, it amounts to investigation. Whether that is right as a matter of fact or

law is a matter which will have to be the subject of the merits debate in the usual way. But it does not deprive it now of having a real prospect of success.

39.  So far as causation is concerned, this is all of a piece really, because the claimants say, if you put that together with other things that were occurring at the same time, it is again something which goes towards the commencement of an investigation ultimately, which is where the claimant has suffered all the losses.  I'm sure there will be arguments backwards and forwards, but they're not taken at this stage.

40.  So subject to the starting date, which depends on "the same or substantially the same facts", I will allow this amendment.

## RULING ON AMENDMENT (3)

41.  I am not going to allow this amendment as a matter of discretion for the following reasons. First, although there are already some isolated matters which go beyond Dechert's or Mr Gerrard's involvement, such as the question of not keeping the website up to date and some use of privileged information, and there is one leak which is just at the time of the criminal investigation in 2013, these new allegations, all concern leaks from I think 2016 to 2019, and are out of the run of the main period of time with which this claim will be concerned.  I have to be acutely concerned here that the essential claims can be dealt with in the existing timetable and that the trial, set for I think 8 June next year, can be dealt with in time where there are already very tight constraints.

42.  It is said that the amendments should be allowed because the allegations are pleaded by way of similar fact in the reply, but it is not actually an agreed issue for the trial and the fact that they are pleaded by way of similar fact evidence only makes that plain.  The SFO may decide to make no admissions and not engage with the point at all on the basis that the similar fact test cannot be made out, or that in any event it is of marginal relevance. So it cannot be said that absent this amendment there was going to be a full-blown fight on the question as to whether these leaks came from some person within the SFO.

43.  On the face of it, I would not say that it is an unarguable claim at the moment, though it obviously has its difficulties.  Mr Akkouh says: well, it's unsurprising we can't give more detail, because we don't know who the person within the SFO is.  But that leads to the major difficulty, as I see it, is it's all very well saying there will be narrow disclosure, but if, as appears to be hinted at, there's going to be a suggestion that this may have been authorised by someone higher up in the SFO, then I can see that to the claimants may say: well, one needs to have a search not merely in a way which goes across a number of possible candidates to see whether they've got documents to show that they were the leaker, but also whether there was someone higher up.

44.  I do not accept at all that a very narrow disclosure exercise consequent on these amendments will satisfy the claimants.  Absent disclosure the SFO will say it is inconceivable that it was anyone from them, and they have strict rules about all of that, and some people that have been identified were not concerned with this investigation, and the other side, the claimant, will say, "Well, there's no smoke without fire", and a journalist has said that he had an SFO source", and there it will begin and end.  Quite what the trial judge is meant to do with all of that I don't know.  In other words, if this point was to be run seriously, there would have to be a substantial disclosure exercise by which effectively the SFO would be proving a negative and the claimant would be wanting to ensure that all possible candidates have their documents searched whether or

not they were otherwise custodians.  That seems to me to have a real risk of derailing the directions which I have given carefully for this trial and which all parties are seeking to comply with so that the trial can take place.

45.    Added to that, the fact of the matter is that it can't be said that these are key issues in any way.  They are add-ons.  If they were true, it would improve the case on the facts somewhat, but I do not regard this as an essential component of the claim even if some of the leaks could only have been discovered recently.

46.    If the claimants really think that this is an important matter which they wish to pursue, the logical thing for them to do is to issue a fresh claim, seek an immediate stay and then see what happens in the main trial, and as a result of what happens in the main trial they may or they may not decide to pursue these individual allegations.  So I'm not going to allow that amendment.

**RULING ON COSTS FOR APPLICATION FOR SECURITY FOR COSTS**

47.    I take the view that the point of principle is absolutely clear.  The costs of and incidental to an application are the costs incurred up to and including the determination of that application, which would also include, for example, the cost of drawing up an order.  Thereafter, the costs that are consequential upon that application for both sides are the costs in their respective cases.  The fact that I ordered that the security should be given in a form satisfactory to both parties because, for example, I was not ordering the money into court, which wouldn't require any further discussion, only meant that that was a substantive order that I made.  Had the parties not resolved their differences and had one side, for example Mr Browne, come back and said, "They are refusing to give a guarantee which we regard as satisfactory; it's obviously unsatisfactory", and if I agreed with him at a further consisted hearing, then he would be getting the costs of that contested hearing.  But that did not happen.

48.    The fact that they spent a lot of money agreeing it is neither here nor there.  In the course of litigation, parties spend a lot of money on many occasions in relation to the action or in agreeing things, but it doesn't mean that you can tag them on to the last relevant application that was dealing with the matter.

49.    And as Mr Pillow pointed out, had there been more time, the obvious course on that occasion would have been for me to summarily assess the costs of the application, which had already been set out in the usual schedule put before me.  It could not possibly be said that the costs would then include all the work that was to be done in relation to the substantive order, otherwise the thing becomes completely unworkable; one can think of examples of disclosure orders where the substantive costs involved in implementing a particular order once the application's been determined will be ongoing for a long time and for very large sums of money.

50.    So that, in my view, is the long and the short of it.  What that means is that I only have to consider the original costs schedule figure of £199,000.  There's not much between the parties.  I go for the round figure of 60%, which is well within the normal margins for interim payments, which I am told is £120,000.  So that's what I will do by way of an award for an interim payment.  That would normally be paid within 4 days.